IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT MERRITT, : | |
|     Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | NO. 19-2785 |
| : | |
| MICHAEL MANCINI, *et al.*, : | |
|     Defendants. : | |

### MEMORANDUM OPINION

**Schmehl, J.**   /s/ JLS                                        September 6, 2022

### I.  INTRODUCTION

Plaintiff, Robert Merritt brings this suit against Defendants, Officer Eric Sbat and Officer Michael Mancini, for alleged violations under § 1983. Before the Court is Defendants' Motion for Summary Judgment and Statement of Material Facts, Plaintiff's Response to Defendants' Statement of Material Facts, Plaintiff's opposition to the motion, and Defendants' reply. For the following reasons, Defendants' motion is granted, and this matter is dismissed.

### II.  FACTUAL BACKGROUND

Officer Eric Sbat is a police officer for the City of Allentown, having been employed as such since 2016. ECF No. 62, Ex. A, Dep. transcript of Officer Sbat, p. 10. Officer Mancini is a former police officer for the City of Allentown, having worked as a police officer for twenty (20) years and retiring from his position in December of 2018. *Id.*, Ex. B, Dep. transcript of Officer Mancini, p. 6.

On December 3, 2018, Officer Mancini was working an extra job for the Allentown Police Department at the LANTA Bus Station and was on duty 6 a.m. to 9 a.m. *Id.*, Ex. B, p. 7. Allentown police officers were asked to assist at the LANTA Bus Station because of the

1

problems the bus station was having with loitering, drug dealing, overdoses, disorderly people, and trespassing. ECF No. 62, Ex. B, p. 7; Ex. C, Dep. transcript of Ashley Dimmich, pp. 10-11. People also would frequent the Dunkin' Donuts located within the bus station without purchasing anything, instead causing a nuisance, or using drugs. *Id.*, Ex. C, p. 11. Officer Mancini testified that part of his duties at the bus station and the Dunkin' Donuts was to ensure people were not loitering and trespassing without purchasing anything. *Id.*, Ex. B, p. 10. Ashley Dimmich was a former employee of the Dunkin' Donuts and was at the Dunkin' Donuts in question on December 3, 2018, the day of the incident in this case, as a patron. *Id.*, Ex. C, pp. 12-13. Dimmich was familiar with Plaintiff as he had been in the Dunkin' Donuts before while she was employed there. *Id.*, p. 13. Dimmich does not recall Plaintiff ever purchasing coffee or food during the times that he would be in the Dunkin' Donuts. *Id*.

On the date of the incident in this case, Officer Mancini noticed Plaintiff with his head down while sitting at the Dunkin' Donuts. Mancini testified that Plaintiff was charging his phone and appeared to be sleeping. *Id.*, Ex. B, p. 9. Plaintiff testified that he was waiting for a friend to bring him money to buy a bus ticket, that he had his head down, and that he "might have ordered some water or something like that." *Id.*, Ex. D, Dep. of Robert Merritt, pp. 23-24, 27, 33. Officer Mancini testified that he had to shake Plaintiff to wake him up, and that he then spoke with Plaintiff, who said he was going to catch a bus at 10:00 a.m., but he did not have a bus ticket on him. *Id.*, Ex. B, p. 11. After Plaintiff informed Officer Mancini that he did not have a bus ticket, Mancini told Plaintiff that he had to leave the store. *Id.*, Ex. B, p. 12; Ex. C, p. 16. Plaintiff refused to leave, became very upset, started to scream, and yell profanity at Mancini. *Id.*, Ex. B, p. 12-13; Ex. C, p. 16, Ex. D, p. 37. Mancini asked Plaintiff to leave 2 or 3 times. *Id.*, Ex. C., p. 16. Plaintiff continued to refuse and continued screaming, until the manager at the Dunkin'

Donuts asked Mancini to remove Plaintiff because he was disturbing the customers. ECF No.62, Ex. B, p. 13-14; Ex. C, p. 17. Mancini handcuffed Plaintiff and transported him to Allentown Police Department. *Id.*, Ex. C, p. 18; Ex. B, p. 15.

On December 3, 2018, Officer Eric Sbat was assigned as the cellblock officer in the holding cell area of the Allentown Police Department. *Id.*, Ex. A, p. 14. This assignment involves being responsible for every person that is brought into the holding cell at the Allentown Police Department. *Id.* The officer is responsible for the person's well-being until they go to the prison or are released. *Id.* at p. 15.

The Allentown Police Department has policies and procedures relating to the detention of individuals who are in the custody of the Allentown Police Department. See ECF No. 62, Ex. E, Cell Block Operations General Order 3-06. This order states that special attention shall be made to search those areas where items could be secreted, such as jacket linings, hidden pockets, hats, belts, footwear, clothing seams, pant waists, and pant cuffs. I*d.*, Ex. E. It further states that the searching officer shall remove all personal property and itemize the property on the prisoner property form. *Id.* A prisoner's property is removed so that prisoners cannot harm themselves with belts, shoelaces, or other items. *Id.*, Ex. A, p. 23. Officer Sbat and Officer Mancini explained to Plaintiff the various items that he would have to remove prior to being held in the holding cell. *Id.*, Ex. A, p. 25; Ex. F, body camera footage of Officer Sbat. Plaintiff was very upset at the request to remove various items of his belongings. *Id.*, Ex. F. The officers requested Plaintiff to remove a ring that he was wearing on his finger as per the policy. *Id.*, Ex. F. Plaintiff refused to take off his ring. *Id.*, Ex. A at p. 33; Ex. F. The officers asked Plaintiff multiple times to remove the ring and he continued to refuse. *Id.* Plaintiff told the officers they would have to "cut his finger off" if they wanted to remove his ring. *Id.*, Ex. A, p. 33, Ex. F. Plaintiff was

advised that he would be held down to have the ring removed and he still refused to remove it voluntarily. ECF No. 62, Ex. A, p. 33, Ex. F. Therefore, Plaintiff was re-handcuffed and Sbat attempted to remove the ring; however, Plaintiff balled up his fists so the officer could not remove it. *Id.*, Ex. A, p. 33; Ex. F. Officer Sbat then performed a wrist lock on Plaintiff, Plaintiff opened up his hands, the ring was removed, and the handcuffs were removed. *Id*. Plaintiff's wrist was broken during this process. *Id.*, Ex. D, pp. 55-56. Plaintiff was charged with defiant trespass and disorderly conduct based on his actions on December 3, 2018. *Id.*, Ex. G, affidavit of probable cause. Neither officer appeared at Plaintiff's preliminary hearing and therefore, the charges against Plaintiff were dismissed. *Id.*, Ex. A, pp. 70-71.

### III. **LEGAL STANDARD**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. Proc. 56(c). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. and N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (*citing Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial

burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

## IV.  DISCUSSION

Plaintiff's Amended Complaint originally contained counts for section 1983 Fourth Amendment false arrest, malicious prosecution and excessive force against Defendant Mancini, section 1983 Fourth Amendment excessive force against Defendant Sbat and state law malicious prosecution against both defendants. Pursuant to a stipulation entered into between the parties, Plaintiff agreed to dismiss Counts I, III and IV as to Officer Sbat, thereby dismissing all claims against him except for an excessive force claim. After discovery was completed, Defendants filed a motion for summary judgment, claiming Plaintiff cannot establish the necessary elements to prove his claims. For the reasons set forth below, I agree and will grant Defendants' motion and dismiss Plaintiff's Amended Complaint.

### A.      False Arrest and Malicious Prosecution as to Officer Mancini

"The Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause." *Rogers v. Powell*, 120 F.3d 446, 452 (3d Cir.1997). Probable cause is a defense against false arrest and imprisonment claims under section 1983. *Pierson v. Ray*, 386 U.S. 547 (1967). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *U.S. v. Cruz*, 910 F.2d 1072 (3d Cir.1990) (*citing Dunaway v. New York*, 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)); *see also Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir.2000) (*quoting Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir.1995)). The constitutional

validity of the arrest does not depend on whether the suspect actually committed the crime. *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005).

In the instant matter, following Plaintiff's actions on December 3, 2018, Officer Mancini charged Plaintiff with disorderly conduct and defiant trespass. Pursuant to 18 Pa.C.S. 3503(b)(1), a person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by actual communication to the actor. Pursuant to 18 Pa.C.S. 5503(a)(2) a person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, makes unreasonable noise.

On the date in question, Officer Mancini was working the LANTA bus station. Ashley Dimmich, a former Dunkin' Donuts employee, testified that Allentown police officers were frequently in the bus station and the Dunkin' Donuts because people often came into the Dunkin' Donuts without buying anything and instead engaged in illegal activity. Mancini noticed Plaintiff sitting in the Dunkin' Donuts in a booth with his head down, charging his phone. Mancini approached Plaintiff, who told him that he did not have any money, nor did he have a bus ticket. Plaintiff testified that he "maybe" bought a water at the Dunkin' Donuts, but Plaintiff often came into the store without purchasing anything. Mancini told Plaintiff that he could not stay at the store, and Plaintiff admittedly refused to leave, becoming loud and disruptive. Dimmich testified that a Dunkin' Donuts employee asked Mancini to have Plaintiff leave the store. Mancini had probable cause to believe that Plaintiff "knowing that he is not licensed or privileged to do so", remained at the Dunkin' Donuts "after notice was provided to him by actual communication" that he could not remain on the property.

Further, Mancini had probable cause to arrest Plaintiff for disorderly conduct. Instead of leaving the Dunkin' Donuts, Plaintiff admitted that he refused to leave, loudly insisting that he

was permitted to be there. Therefore, Plaintiff clearly created a situation of public inconvenience and annoyance, and Mancini had probable cause to arrest him.

To establish a claim for malicious prosecution, Plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir.2005) (*quoting Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir.2003)). As discussed previously, probable cause existed for both charges. Accordingly, Plaintiff cannot support a claim for malicious prosecution. Summary judgment as to Plaintiff's false arrest and malicious prosecution claims is granted.[1]

### B. Excessive Force as to Officers Sbat and Mancini

When an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Such a

---

[1] In his reply brief, Plaintiff attempts to create a genuine issue of material fact as to his malicious prosecution and false arrest claims by arguing that Mancini had no authority to ask Plaintiff to leave Dunkin Donuts because he was to be patrolling the bus station and not the Dunkin' Donuts. In support of this argument, Plaintiff produced for the first time with his reply brief, documents related to the ownership of Dunkin' Donuts and meeting minutes and board disclosures from LANTA. However, Plaintiff failed to produce any of these documents in discovery. Therefore, I am not permitted to consider them in the context of the instant motion.

However, even if I were to consider the documents belatedly produced by Plaintiff regarding the ownership of the Dunkin' Donuts, I find that these documents are insufficient to create a genuine issue of material fact. Dimmich, an independent witness, testified that Allentown Police Officers were often in the bus station and the Dunkin' Donuts to curb illegal activity, Plaintiff often came into the store without purchasing anything, Plaintiff's lack of a bus ticket and his admission that he refused to leave, as well as the fact that a Dunkin' Donuts employee asked Mancini to have Plaintiff leave the store all show that there is no genuine issue of material fact that Mancini had probable cause to arrest Plaintiff.

claim is analyzed under an "objective reasonableness" standard. *Id*. at 388. This standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396. Excessive force, like probable cause, is usually a question of fact, but can be decided before trial if an officer's use of force was objectively reasonable, even viewing the facts in favor of the plaintiff. *See Abraham v. Raso*, 183 F.3d 279, 289–90 (3d Cir. 1999).

In the instant matter, Plaintiff's Amended Complaint sets forth an excessive force claim against Defendants under the Fourth Amendment. Defendants claim that Plaintiff's excessive force claim must fail, whether it is analyzed under the Fourth Amendment or whether Plaintiff is considered a pretrial detainee and his claims are therefore examined under the Fourteenth Amendment. *See Leone v. Towanda Borough*, 2012 WL 2590387, at *5 (M.D. Pa. July 3, 2012) (noting that the Fourth Amendment protects against excessive force used during an arrest, whereas the Fourteenth Amendment's protections apply once an arrestee becomes a pretrial detainee). The Fourth Amendment protects individuals from the use of excessive force by government officials from the point of seizure until the individual seized becomes a pretrial detainee. *See Bodnar v. Wagner*, 2010 WL 56097, at *6 (M.D. Pa. Jan. 5, 2010). Once the individual becomes a pretrial detainee, "the Due Process Clause of the Fourteenth Amendment provides continuing protection." *Bodnar*, 2010 WL 56097 at *6 (*citing James v. York Cnty. Police Dep't*, 160 F. App'x 126, 131 (3d Cir.2005)).

"Where the seizure ends and pre-trial detention begins is a difficult question." *United States v. Johnson*, 107 F.3d 200, 207 (3d Cir.1997)). But it is clear that the Fourth Amendment "applies to government conduct during the course of an arrest, and it continues during

8

transportation of an arrestee to the police station." *See Bodnar,* 2010 WL 56097 at * 6; *citing Groman v. Twp. of Manalapan*, 47 F.3d 628, 633–34 (3d Cir.1995)). After the arrestee arrives at the station house, however, courts consider factors such as "the length of time in custody, whether the arrestee has been transferred out of custody of the arresting officers, and whether the arrestee has been arraigned," to determine whether the arrestee has become a pre-trial detainee. *Id.* (*citing Dull v. W. Manchaster Twp. Police Dep't.*, 2008 WL 717836, at *9 (M.D.Pa. Mar.17, 2008)). Clearly, any claim of excessive force that arose while Mancini was interacting with Plaintiff at the Dunkin' Donuts should be analyzed under the Fourth Amendment, as he was merely an arrestee at that point.

As to the actions taken by the officers once Plaintiff was in the holding cell, that is a more difficult question. The short length of time that Plaintiff had been in custody, the fact that he was still partially in the custody of Officer Mancini, the arresting officer, and the fact that he was arrested without a warrant and had not yet been arraigned, all lead me to the conclusion that Plaintiff was not yet a pretrial detainee at the time of the alleged excessive force in the holding cell.[2] Accordingly, Plaintiff's claim for excessive force should be analyzed under the Fourth Amendment.

First, as to Plaintiff's Fourth Amendment excessive force claim against Defendant Mancini for his actions at the Dunkin' Donuts, Plaintiff's Amended Complaint only alleges that Mancini lent "verbal and physical support" to Officer Sbat, who allegedly struck Plaintiff four times at the store. Further, the Amended Complaint also states that Officer Sbat hit Plaintiff and attacked Plaintiff while handcuffed at the Dunkin' Donuts. However, the record clearly shows

---

[2] The Supreme Court has not yet determined whether pretrial detainees can bring excessive force claims under the Fourth Amendment. *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 n. 4 (3d Cir. 2021*), citing Kingsley v. Hendrickson*, 576 U.S. 389, 408 (2015) (Alito, J., dissenting); *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989).

that Officer Mancini was at the Dunkin' Donuts alone and Officer Sbat was not present at the time Plaintiff was taken into custody. ECF No. 62, Ex. A, pp. 17-18. As Plaintiff fails to plead that Officer Mancini used any force against him at the Dunkin' Donuts, this claim must fail.

Assuming, *arguendo*, that Plaintiff had pled Officer Mancini took actions at the Dunkin' Donuts against Plaintiff, this claim still must fail. Dimmich testified that she did not see Mancini strike Plaintiff at any time. The summary judgment record is void of any credible evidence that Mancini used any force against Plaintiff at the Dunkin' Donuts. Accordingly, this claim must fail.

Next, Plaintiff's Fourth Amendment excessive force claim against the officers for actions taken in the holding cell must be examined. A law enforcement officer's use of excessive force during an arrest or investigatory stop constitutes an unlawful "seizure" under the Fourth Amendment. *Graham*, 490 U.S. at 394; *Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir.2004). To determine whether specific conduct qualifies as excessive force, the court must examine its objective "reasonableness." *Graham*, 490 U.S. at 395–96. The court should consider the severity of the crime, the suspect's "immediate threat" to the safety of officers or others, resistance to arrest, attempts to flee, and access to weapons. *Id*. at 396; *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir.2006). The court should also consider the duration of the law enforcement officer's use of force, whether the officer was attempting to effect an arrest, and the presence of accomplices. *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir.1997) (abrogated on other grounds by *Curley v. Klem*, 499 F.3d 199 (3d Cir.2007)). The court must examine the use of force from "the perspective of a reasonable officer on the scene," without the benefit of hindsight. *Graham*, 490 U.S. at 396.

Regarding the officers' conduct in the holding cell, it is undisputed that Plaintiff's wrist was broken during his interaction with Officers Sbat and Mancini. To determine whether the force used by the officers was objectively unreasonable, I must examine the factors set forth above. Plaintiff was charged with disorderly conduct and defiant trespass, which are not severe crimes. He did not have access to weapons or make any attempt to flee. However, a review of the video showing Plaintiff's interaction with the officers in the holding cell shows that he was extremely resistant to arrest. Plaintiff claims that he tried to comply with the officers' requests that he remove his ring and that they refused to wait for him to do so. However, that is completely contradicted by the video evidence. Rather, Plaintiff was belligerent, used excessive profanity and absolutely refused to remove the ring from his finger.

The video evidence shows that Plaintiff was combative and resistant from the very beginning of his interactions with the officers, and that continued up to the time when he was asked to remove his ring. In fact, he told the officers that they would need to "cut his finger off" in order to remove his ring. In response to that type of behavior by Plaintiff, Mancini placed handcuffs on Plaintiff and Sbat attempted to remove the ring. Sbat was forced to resort to using a wrist lock on Plaintiff to force him to unclench his fist after Plaintiff balled his fist up and refused to open it. Further, the duration of the use of force was short, as seen in the video. In fact, the time from when Plaintiff was handcuffed to the time when Sbat managed to remove the ring was less than thirty seconds. Because Plaintiff was extremely resistant to his arrest, as well as the short period of time that force was applied to his wrist to remove the ring, I find that there is no genuine issue of material fact that the force used by the officers was objectively reasonable.[3]

---

[3] Plaintiff argues that because the General Orders of the Allentown Police Department do not specify that a detainee cannot wear jewelry, the officers' actions in using a wrist lock to remove the ring was unreasonable. However, this does not rise to the level of a constitutional violation. Courts in this Circuit have held that a "policy manual does not

Therefore, I will grant Defendants' Motion for Summary Judgment and dismiss Plaintiff's Amended Complaint.

## V.   **CONCLUSION**

In conclusion, there is no genuine issue of material fact as to Plaintiff's claims. Accordingly, Defendants' Motion for Summary Judgment is granted, and this case is dismissed. An appropriate order follows.

---

have the force of law and does not rise to the level of a constitutional violation." *Atwell v. Lavan*, 557 F. Supp. 2d 532 (M.D. Pa. 2008).